(169 App. Div. 509)

## In re LENNEY.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ☞53—DISBARMENT—EXTORTION OF MONEYS.

    Evidence *held* to show respondent guilty of extortion, amounting to blackmail, sufficient to warrant his disbarment.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. ☞53.]

Proceeding by the Association of the Bar of the City of New York against James C. Lenney, an attorney and counselor at law, for professional misconduct. Respondent disbarred.

See, also, 160 App. Div. 929, 145 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (Alfred A. Cook, of New York City, of counsel), for petitioner.

PER CURIAM. The charges against this attorney, made by the Association of the Bar of the City of New York, are, as summarized and stated by the official referee, that:

    "In April, 1905, the respondent and one George Edwin Jones conspired to obtain money from Mrs. Sabin and Mrs. Newell, Jones' sisters, and, to carry into execution their scheme, proceeded to institute false and groundless actions and other proceedings against them."

There is little or no dispute as to the facts; respondent's culpability or lack of it being determinable from those facts. Respondent was admitted to the bar in this department in the year 1898, and has ever since maintained an office and practiced his profession in the city of New York. George Edwin Jones, with whom respondent is charged with conspiring, is or was a resident of Chicago, and the son of Daniel A. Jones, also a resident of Chicago, who died in 1886, leaving four children, to wit, Mrs. Harriet G. Sabin, Mrs. Mary O. Newell, William Jarvis Jones, and the said George Edwin Jones. He also left a widow, who was not, however, the mother of the aforesaid chil-

dren, who were the issue of a former wife. By his will Daniel A. Jones left a trust fund of $150,000 for each of his sons, and left to each of his daughters $350,000 outright.

On February 10, 1905, Mrs. Harriet A. Jones, stepmother of the above-named children of Daniel A. Jones, died, leaving a will which was duly admitted to probate in Cook county, Ill. She left an estate amounting to about $700,000. She made numerous bequests to institutions and to relatives of her own, and gave to each of her stepsons, George Edwin Jones and William Jarvis Jones, a life estate in a fund of $25,000. The residue of her estate, comprising about one-half thereof, she bequeathed to Mrs. Sabin and Mrs. Newell, her stepdaughters. But for this will the said stepchildren of Mrs. Harriet A. Jones would not have been entitled to receive any portion of her estate. Under the laws of the state of Illinois a proceeding to contest a will must be initiated within one year after the probate thereof, which would have been in this case on or before March 20, 1906. George Edwin Jones was dissatisfied with the provision for himself contained in his stepmother's will, and began to consult Chicago attorneys even before its probate, and as early as March 1, 1905, with reference to a contest.

The first association of respondent with George Edwin Jones, with reference to a contest of the will of Mrs. Harriet A. Jones, seems to have occurred in March or April, 1905, when respondent was in Chicago on a visit. At this time Jones expressed his dissatisfaction with the will of his stepmother and discussed some of the possible grounds on which it might be contested. Respondent was then informed that George Edwin Jones and William Jarvis Jones had consulted a firm of Chicago attorneys, and also an attorney named Judah, concerning a contest of the will. The respondent learned and knew at this time that neither George Edwin Jones nor his brother or sisters were blood relatives of Mrs. Harriet A. Jones; that said Harriet A. Jones had blood relatives residing in the state of Connecticut, who would inherit her estate if her will was overthrown and she had died intestate, and that among those relatives were Albert H. Knapp, a grandnephew, residing at Bridgeport, Conn., and James W. Gregory, a nephew, residing at Meriden, Conn. George Edwin Jones commissioned respondent, on returning to New York, to seek out Albert H. Knapp and ascertain whether he was dissatisfied with the will of Mrs. Jones, and whether he had retained an attorney. This course was rendered necessary because George Edwin Jones, for lack of blood relationship to Mrs. Jones, was neither in a position to contest her will, nor to profit from such a contest if it should be successful. It was therefore necessary to find some relative who would inherit if the will were destroyed, and who would be complainant in an action to destroy it. Respondent did seek out and interview Mr. Knapp, but no arrangement was made at that time for a contest.

In the winter of 1905–06, or early in the year of 1906, there was prepared in the office of a firm of attorneys in Chicago, a bill of complaint, entitled in the superior court of Cook county,

Ill., wherein Albert H. Knapp and James W. Gregory were named as complainants, although neither of them had at that time agreed to act in that capacity, and Mrs. Sabin, Mrs. Newell, George Edwin Jones, and William Jarvis Jones, with others, were named as defendants. This bill of complaint, among other things, contained scandalous and apparently false allegations, charging Mrs. Sabin and Mrs. Newell with having, through the employment of a trained nurse or attendant, exercised undue influence to induce the making of a will in their favor. On or about February 24, 1906, George Edwin Jones came to New York, bringing with him certain papers relating to the estate of Harriet A. Jones, including the draft bill of complaint above referred to. At the request of George Edwin Jones, respondent accompanied him to Bridgeport, Conn., and procured the consent of Albert H. Knapp to act as complainant. James W. Gregory, although strongly pressed by Jones and the respondent, refused to lend his name to the suit.

It seems clear that respondent had no hand in drafting the aforesaid bill of complaint, and that he had no knowledge whether or not the charges contained therein against Mrs. Sabin and Mrs. Newell were groundless. He certainly did not know that they were well founded. So far as it is charged that the Illinois action to revoke the probate of the will was a false and groundless action instituted by respondent, the evidence fails to sustain the charge. The serious misconduct of which he has been found guilty by the official referee has relation to an action begun by George Edwin Jones against Mrs. Sabin and the attempt to commence one against Mrs. Newell.

As has been said no material advantage could come to Jones by merely breaking his stepmother's will. Whatever advantage resulted from such an action would accrue to Mrs. Jones' blood relatives. The only way for Jones to make anything would be by taking an assignment from some relative, or by inducing his sisters to pay him something to refrain from the attempt to destroy the will. This latter course was adopted, and, while the respondent may not have been concerned originally in the proposed action to break the will, he co-operated with Jones in finding a complainant and actively engaged in the attempt to extort money from Mrs. Sabin and Mrs. Newell under threat that the suit to revoke the probate of the will would be pressed.

On February 24th and 25th respondent examined the papers, including the proposed bill of complaint, which Jones had brought on from Chicago, and also discussed with Jones the project of bringing an action against Mrs. Sabin, who, although a resident of Williamstown, Mass., was then in New York City. On Monday, February 26, 1906, Jones received from his Chicago attorneys a corrected bill of complaint in the will suit, and also a power of attorney which those attorneys wished to be executed by whoever should agree to act as complainant. On the same day Jones and the respondent went to Connecticut and saw Albert H. Knapp, who signed the bill of complaint and also the power of attorney. The latter document was signed by respondent as a witness to Knapp's signature, and showed on its face that

Jones was planning to set aside the will of Harriet A. Jones and to secure what the official referee justly characterizes as an excessive remuneration. The evidence leaves no doubt that the respondent, at this time, was fully cognizant of Jones' intentions as to destroying the will, and knew the contents of the bill of complaint and power of attorney. An attempt was made to induce Gregory to sign the bill of complaint and power of attorney; but he refused, as he had theretofore done.

Prior to leaving New York for Connecticut, respondent had arranged for a summons to be prepared in an action by George Edwin Jones against Mrs. Sabin. This summons was in the usual form for an action for a money demand, and contained a notice that, in default of appearance or answer, judgment would be taken against Mrs. Sabin for the sum of $150,000, with interest from March 20, 1905, which was the date of the probate of Mrs. Jones' will. The summons was signed with the name of respondent's law firm, Lenney, Maguire, Giffen & Bizel, and was served on Mrs. Sabin by one McDonnell, a young man in respondent's employ.

Mr. Sabin and Jones came together on February 27th to discuss this suit, which apparently was a complete surprise to Mr. and Mrs. Sabin. How they came together, and which sought out the other, is a matter of dispute between Jones and Sabin; but it is of slight importance which version be accepted. They did meet and discussed a possible settlement. They went together to respondent's office, and Jones, in respondent's presence, delivered to McDonnell (the man who had served the summons on Mrs. Sabin) the bill of complaint, with instructions to take it to Chicago and file it, unless notified by telegraph that a settlement had been effected.

About 6 o'clock on the evening of February 27th, Jones went to the Buckingham Hotel pursuant to appointment, and there conferred with Mr. and Mrs. Sabin with reference to a settlement of the suit against the latter. Before this interview Mr. and Mrs. Sabin had been furnished with and had read a copy of the bill of complaint in the will suit, and professed to have been, and undoubtedly were, shocked and horrified at its contents. The result of this interview was that Mrs. Sabin paid George Edwin Jones the sum of $2,500, and agreed in writing to pay him the additional sum of $27,500 when the estate of Harriet A. Jones had been settled and she had received her share.

Both Mr. and Mrs. Sabin testify, and there can be no doubt of the fact, that this settlement was arrived at solely in order to avoid the contest of the will and to prevent the publication of what Mrs. Sabin described as the "awful accusations" contained in the bill of complaint. It is equally clear that Jones threatened that the bill of complaint would be filed immediately if a settlement satisfactory to him was not made. The fact that a settlement had been arrived at was at once conveyed by Jones to the respondent, who drew and signed a consent to a discontinuance of the action of Jones v. Sabin, and caused it to be sent to Mrs. Sabin.

It appears quite clearly that the action against Mrs. Sabin was without foundation in law or fact, and that the respondent knew perfectly

well, when he brought it, that it was groundless. He attempts to state several grounds upon which the action might have been maintained, but no one of these grounds will stand examination. They are evidently afterthoughts. On this subject we cite with approval the following from the report of the Official Referee:

"The respondent's explanation of the commencement of this action by the summons, in the manner and in the form appearing, and at the particular time, fails to set forth any theory, based upon statements made to him by his client, or facts within his own knowledge, that warranted him in advising that the Sabin action could be maintained as a matter of law. So mythical and indefinite are the alleged possible causes of actions that might follow the summons, as stated by the respondent, that they could have no foundation in law or common sense, and, when all the facts and circumstances established by the testimony in this proceeding are carefully weighed, the only reasonable inference is that the action was one step in a scheme in which Jones and the respondent were engaged to wring money from Mrs. Sabin."

In short, the evidence established that Jones and the respondent engaged in a scheme to blackmail Mrs. Sabin, and to extort money from her under the threat that the scandalous bill of complaint in the will suit would be filed and published unless a sum of money was paid or agreed to be paid to Jones. This was the practical effect of the finding of a jury in an action subsequently brought by George Edwin Jones against Mrs. Sabin to enforce the payment of the promised sum of $27,-500. In that action, not only was the plaintiff defeated, but judgment was rendered against him for the $2,500 which had been paid to him by Mrs. Sabin. The judgment was affirmed by this court, and an appeal thereafter taken to the Court of Appeals was withdrawn before argument.

Not content with the successful blackmailing of Mrs. Sabin, respondent made a similar attempt against Mrs. Newell, who was traveling in Europe when the settlement with Mrs. Sabin was effected. On March 6, 1906, respondent sailed for Europe, arriving at Naples about the middle of the month. He filled out and took with him a summons in an action entitled in the Supreme Court of this state, in which George Edwin Jones was named as plaintiff and Mrs. Mary O. Newell was named as defendant. The summons was in the usual printed form, and recited that, in default of appearance or answer, judgment would be taken against the defendant "for the relief demanded in the complaint."

On the day after respondent reached Naples, Mrs. Newell also arrived there. Respondent unsuccessfully sought an interview with her, and then followed her to the Naples Museum, where, by his direction, the above-described summons was handed to her by a Mr. Forbes. This was on March 17, 1906. It is conceded that no order had been obtained for substituted service on Mrs. Newell. On March 20th, when both respondent and Mrs. Newell were in Rome, the respondent again sought an interview in a letter, in which he stated that he thought a personal talk might adjust everything. No attention was paid to this letter, and no interview resulted.

The respondent's attempts to explain what cause of action George Edwin Jones had against Mrs. Newell are pitiably weak and unsatisfactory. He gives no explanation of his service of a summons, which he

knew was ineffective, except that Jones had told him that Mrs. Newell had agreed to appear anywhere. It seems to be impossible to escape the conclusion that respondent was guilty of serious professional misconduct in conspiring with Jones to blackmail the latter's sisters, and in misusing the forms of law to effect this purpose.

It is clear that George Edwin Jones had no cause of action against either of his sisters, and that respondent knew it, and that his commencement of an action against Mrs. Sabin, and the irregular service of a summons on Mrs. Newell, were but the means adopted to extort money for which no legal claim existed.

The respondent is manifestly unfit to remain an officer of the court and a member of an honorable profession. He is therefore disbarred.